A. B. CORDES et al., Appellants, v. BOARD OF SUPERVISORS OF HAMILTON COUNTY et al., Appellees.

**DRAINS: Appeal—New Objections.** Objections which go to the jurisdiction of the board of supervisors may, on appeal, be raised for the *first* time in the district court.

**DRAINS: Establishment—District Wholly Within Town.** The board of supervisors has jurisdiction, under Sec. 1989-a38, Code Supp., 1913, to establish a drainage district wholly within the limits of a town.

**STATUTES: Legislative Construction.** While a *legislative* construction of a prior statute is not binding upon the courts, yet it is entitled to consideration.

**DRAINS: Assessments—Review.** Principle reaffirmed that approximate accuracy in the assessment of benefits is the best that any board or court can do, and if the basis of the assessment is fair, such assessment should stand, unless the evidence shows an erroneous classification or one that materially departs from the purview of the statute.

*Appeal from Hamilton District Court.*—R. M. WRIGHT, Judge.

FEBRUARY 5, 1924.

This is an appeal by the landowners from the action of the district court in confirming certain drainage assessments. The facts are stated in the opinion.—*Affirmed.*

*Martin & Alexander,* for appellants.

*J. M. Blake* and *J. E. Burnstedt,* for appellees.

VERMILION, J.—Two principal questions are presented on this appeal. It is urged (1) that the board of supervisors was without authority to establish the drainage district, and (2) that the amount of the assessments upon plaintiffs' lots is excessive and inequitable in comparison with that upon other land and lots in the district, and not in proportion to benefits.

The contention that the board of supervisors was without authority to establish the district is based upon the fact that the drainage district is wholly within the limits of the incorporated town of Kamrar. This question was not raised in the objections filed before the board, but was first presented by an amendment to the objections filed in the court below, upon an appeal from the action of the board. The amendment was stricken on motion of the appellees, and the preliminary question is presented of the right to urge, on appeal to the district court, objections not filed before the board. If the appellant had no right to raise the question presented for the first time on appeal in the district court, or if there is no merit in the contention that the board, for the reason urged, was without power to establish the district, there was no error in striking the amendment to the objections.

1. DRAINS: appeal: new objections.

It has been held that, on appeal to the district court from the action of the board of supervisors in levying assessments to pay the cost of such an improvement, the appellant is confined to the objections filed before the board, unless the appeal presents the question of the jurisdiction of the board to act at all. *Lightner v. Board of Supervisors of Greene County,* 145 Iowa 95. The amendment to the objections filed in the lower court raised the question that the board of supervisors had no power or jurisdiction to establish the drainage district in question, for the reason that the district was wholly within the limits of an incorporated town. Under the authority cited, we think the question was one that could properly be raised for the first time on appeal; but, in view of our conclusion upon the merits of the question, the appellant was in no manner prejudiced by the action of the court in striking the amendment.

The power and authority of the board of supervisors in the establishment of drainage districts are statutory. The author-

ity is found in Section 1989-a1 of the Code Supplement of 1913

2. DRAINS: estab-
lishment: dis-
trict wholly
within town.

and the sections following. It is not questioned that its power to do what was done in this instance was ample, generally speaking, but it is claimed that it had no power to establish a drainage district wholly within the limits of an incorporated town. Section 1989-a38 of the same chapter provides in part as follows:

"The board of supervisors shall have the same power, right and authority to establish a levee or drainage district that includes the whole or any part of any incorporated town or city, including cities acting under special charter, as they have to establish districts as hereinbefore provided, and they shall have the same power, right and authority with respect to the assessment of damages and benefits within such towns or cities as they have in other cases provided for in this act * * *."

It is conceded that this section empowers the board to establish a drainage district that includes within its limits the whole or any part of an incorporated town, with other territory lying outside the corporate limits of the town; but it is insisted that it does not authorize the establishment of such a district wholly within the limits of the town.

Much that could be convincingly said respecting the right of a municipality to control the territory lying within its limits, and its power to provide adequate drainage and sewerage for the property lying therein, and the conflict of authority that would ensue if the jurisdiction of the board of supervisors in respect to the establishment of drainage districts should be extended to cover such territory, is fully answered by the statute. The statute is broad enough to confer authority to establish a drainage district wholly within the limits of a town, since under it the power is given to include in such a district the whole or any part of the territory within the corporate limits, without any restriction of the right to establish a district wholly within such limits. And inasmuch as authority is expressly given to include the whole of the territory of a town, there is no reason, based upon considerations of inexpediency, lack of necessity, or conflict of authority, why such a limitation should be implied.

It is evident that no such limitation was in the legislative mind; for by Chapter 224 of the Acts of the Thirty-seventh Gen-

eral Assembly it is provided "that whenever heretofore, the board of supervisors of any county has, or may hereafter, establish any drainage district which is located wholly within the incorporated limits of any city or town," the board may, under certain circumstances, relinquish control over the drain to the municipality.

Again, by Chapter 414 of the Acts of the same General Assembly it is provided that the rights granted to cities and towns under the chapters of the Code relating to sewers and to the protection of city property from floods "shall not be exclusive of any right of the board of supervisors to establish a drainage district or districts within or which shall include the whole or any part of any such city or town" under the chapter of which Section 1989-a38 is a part.

It is contended that neither of these enactments amounts to a direct grant of power to establish a drainage district wholly within the limits of a town. They are, however, an unequivocal recognition by the legislature that the power already existed. These acts were in force at the time the proceedings in question were begun. While a legislative construction of a prior statute is not binding upon the courts, it is entitled to consideration. *Prime v. McCarthy,* 92 Iowa 569; *Elks v. Conn,* 186 Iowa 48; *Slutts v. Dana,* 138 Iowa 244. The rule is even more broadly stated by the United States Supreme Court, which holds that, if it can be gathered from a subsequent statute *in pari materia,* what meaning the legislature attached to the words of a former statute, it will amount to a legislative declaration of its meaning, and will govern the construction of the first statute. *United States v. Freeman,* 3 How. (U. S.) 555 (11 L. Ed. 724).

3. STATUTES: legislative construction.

These statutes by their very terms effectually dispose of any contention that, because of any overlapping of powers or any exclusive right in cities or towns to control or dispose of surface or flood water within their limits, any restriction upon the power of the board of supervisors to establish drainage districts wholly within the limits of such municipalities exists, by implication or otherwise. It is unnecessary, in this view of the matter, to discuss the cases from other states cited by appellants, further than to say that they arose under statutes very different from

our own. We have no difficulty in reaching the conclusion that the board of supervisors had authority to establish the district in question.

The contention in respect to the amount of the assessments laid upon appellants' lots is that they are inequitable in comparison with the amount assessed against town property and other lots or tracts of agricultural land in the district.

Certain propositions are recognized as the ultimate foundation upon which assessments to pay for public improvements of this character must be based. All the lands and lots within the district are presumed to be benefited. The cost of the improvement must be paid from the proceeds of assessments on the property within the district. The assessment that can be laid against a particular tract is not limited by the present benefits resulting to it from the construction of the improvement, but it may and should represent a fair proportional amount of the total cost. In the nature of things, this is a matter concerning which mathematical accuracy cannot be secured. As has been said:

4. DRAINS: assessments: review.

"Approximation is the best that any board or court can do, and, if the basis of the board is fair, it does not justify our interference where the evidence fails to show an erroneous classification or one that materially departs from the purview of the statute in making computation." *Rogers v. Board of Supervisors,* 195 Iowa 1, 5.

A presumption is entertained in favor of the action of the commissioners, the board, and the court below. The report of the commissioners spreading the assessment is presumed to be correct. *Hatcher v. Board of Supervisors,* 165 Iowa 197. It requires a strong and satisfactory showing to justify this court in interfering with the concurrent findings of the board and of the district court. *Thomas v. Board of Supervisors,* 194 Iowa 1316. To justify a modification of an assessment such as these, there must be evidence that impeaches the officially expressed judgment of the commissioners and board in making the assessment, and a showing that essential elements which should enter into the estimate were not considered, or that an erroneous assessment and an inequitable apportionment were made. *Rogers v. Board of Supervisors,* supra.

The lots belonging to appellants are two tracts, of ten acres each, of agricultural land, lying outside the platted portion of the town. Upon each tract there was a pond or swamp. As a part of the improvement, tile drains were laid into these ponds: one line of tile running entirely across both tracts, with an intake in one pond a short distance beyond appellants' line, and a branch wholly upon one of the lots, having its intake in the pond on that lot. A portion of the platted part of the town was served by a storm sewer, before the construction of the improvement. This, at its former outlet, was connected with the drainage of the district, and the flow from the storm sewer was carried to the outlet provided for the district. In the construction of the improvement, no tile was laid in the platted part of the town.

In making the assessment, an amount was put against each tract upon which tile was laid, because of the drainage facilities afforded by the presence of the tile in the land. This was in proportion to the amount of tile upon each tract. The amount that should be paid on account of the drainage of streets, alleys, and highways was determined, and the amount to be assessed against a railroad right of way lying within the district. The sum of the amounts so fixed was deducted from the total cost of the improvement, and the balance was assessed against the land and lots within the district. The lands were classified as high, low, wet, or swamp, and the method followed in determining the amount to be so assessed to each tract was substantially that approved by this court in *Pabbeldt v. Hamilton County*, 144 Iowa 476, and *Obe v. Board of Supervisors*, 169 Iowa 449. There was added to the amount so arrived at, in the case of tracts found to be benefited by the laying of tile upon them, the amount previously determined as proper on that account. The assessments laid upon all the land outside of the town plat were arrived at in the same manner. We are satisfied that the result, so far as relates to appellants' lands, and in comparison with other agricultural land in the district, was not inequitable.

The portion of the land in the district platted into town lots, while such that it would have been designated as high, had it been agricultural lands, was in fact considered as low land. The result of this was that a given area of platted land bore an

assessment six times as great as an equal area of unplatted agricultural high land, while the only benefit it received, aside from that resulting from the drainage of surrounding lands, was the connection of the storm sewer, which already supplied drainage for cellars and the like, to the drainage system of the district. This was doubtless in recognition of the fact that the lots were, or probably would be, occupied by buildings and other improvements, the convenient use and durability of which would be enhanced by the improvement. *Chicago, R. I. & P. R. Co. v. Wright County Dr. Dist.*, 175 Iowa 417. It was said in that case that it was competent for the board to take into consideration the facts that the solidity and safety of the roadbed of a railway, the maintenance of its track, and the effective life of its ties, culverts, bridges, and fences would be materially promoted by drainage of the swamp and surface waters from its right of way and from the immediately adjacent premises; that the statute did not contemplate the treatment of the right of way solely as a mere fraction of the agricultural area in which it was found: and an assessment materially greater than the average assessment per acre upon farm lands in the district was sustained. This is relied upon by appellants to support their contention that the assessments against town lots should not have been made on the same basis as on agricultural lands. While, as we have seen, the same method was used, the classification of the town lots as low, when their situation in that respect justified their designation as high lands, resulted in their bearing a proportionately much higher assessment than would have been the case if the classification given to farm lands had been followed. The result was, in principle, that for which appellants contend. The town lots were assessed, area for area, more than farm land similarly situated. In view of the fact that the greatest benefit to the town lots was the mere removal to a greater distance of the outlet of the storm sewer already in operation, we cannot say that the assessments of which appellants complain were excessive when compared with assessments on town lots that, for a given area, were six times the assessment on farm land in like situation.

The judgment is—*Affirmed.*

Arthur, C. J., Stevens and De Graff, JJ., concur.